1
2
3
4
5
6
7
8
9     UNITED STATES DISTRICT COURT

10     CENTRAL DISTRICT OF CALIFORNIA

11
LUZ M. DIAZ ESPINOZA,                    )          Case No. EDCV 12-02094-JEM
12                                        )
                        Plaintiff,        )
13                                        )          MEMORANDUM OPINION AND
            v.                            )          ORDER REVERSING DECISION OF
14                                        )          THE COMMISSIONER OF SOCIAL
CAROLYN W. COLVIN,                        )          SECURITY
15  Acting Commissioner of Social Security, )
                                          )
16                      Defendant.        )
17  ──────────────────────────────  )

18                              **PROCEEDINGS**

19          On December 13, 2012, Luz M. Diaz Espinoza ("Plaintiff" or "Claimant") filed a

20  complaint seeking review of the decision by the Commissioner of Social Security

21  ("Commissioner") denying Plaintiff's applications for Social Security Disability Insurance

22  benefits and Supplemental Security Income benefits.  The Commissioner filed an

23  Answer on March 20, 2013.  On September 4, 2013, the parties filed a Joint Stipulation

24  ("JS").  The matter is now ready for decision.

25          Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this

26  Magistrate Judge.  After reviewing the pleadings, transcripts, and administrative record

27  ("AR"), the Court concludes that the Commissioner's decision must be reversed and

28

remanded for further proceedings in accordance with this Memorandum Opinion and Order and with law.

**BACKGROUND**

Plaintiff is a 53-year-old female who applied for Social Security Disability Insurance benefits on September 25, 2009 and Supplemental Security Income benefits on April 21, 2011.  (AR 26.)  The ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 10, 2007, the alleged onset date of her disability.  (AR 28.)

Plaintiff's claims were denied initially on February 3, 2010 and on reconsideration on March 10, 2010.  (AR 26.)  Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Barry H. Jenkins on April 12, 2011, in Las Vegas, Nevada.  (AR 26)  Claimant appeared and testified at the hearing and was represented by counsel.  (AR 26.)  Vocational expert ("VE") Bernard M. Preston also appeared and testified at the hearing.  (AR 26.)

The ALJ issued an unfavorable decision on July 26, 2011.  (AR 26-34.)  The Appeals Council denied review on October 1, 2012.  (AR 1-3.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1.   Whether the ALJ has properly considered the relevant medical evidence of record?

2.   Whether the ALJ has properly considered Plaintiff's subjective complaints and properly assessed her credibility?

3.   Whether the ALJ has properly developed and considered the vocational evidence of record in this case?

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error.

Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance."  Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has established a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging in substantial gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether

the claimant has a severe impairment or combination of impairments.  Parra, 481 F.3d at 746.  An impairment is not severe if it does not significantly limit the claimant's ability to work.  Smolen, 80 F.3d at 1290.  Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations.  Parra, 481 F.3d at 746.  If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen v. Yuckert, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).

Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  Residual functional capacity ("RFC") is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).  The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience.  20

1   C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is

2   disabled and entitled to benefits.  Id.

3                                    **THE ALJ DECISION**

4          In this case, the ALJ determined at step one of the sequential process that Plaintiff

5   has not engaged in substantial gainful activity since March 10, 2007, the alleged onset

6   date.  (AR 28.)

7          At step two, the ALJ determined that Plaintiff has the following severe impairment:

8   disorders of the back (20 C.F.R. §§ 404.1520(c) and 416.920(c)).  (AR 28-29.)

9          At step three, the ALJ determined that Plaintiff does not have an impairment or

10  combination of impairments that meets or medically equals one of the listed

11  impairments.  (AR 29.)

12         The ALJ then found that Plaintiff has the RFC to perform light work as defined in

13  20 C.F.R. §§ 404.1567(b) and 416.967(b), except for the following limitations:

14              . . . may only occasionally balance, stoop, kneel, and crouch, and

15              frequently climb stairs and ramps, but never climb ropes, ladders or

16              scaffolds.  She may only occasionally reach overhead bilaterally, and

17              frequently reach (other than overhead), handle, finger, feel, push and

18              pull bilaterally.  She may only occasionally operate foot controls

19              bilaterally.

20  (AR 29-32.)  In determining this RFC, the ALJ made an adverse credibility determination.

21  (AR 30.)

22         At step four, the ALJ found that Plaintiff is unable to perform her past relevant

23  work as a packer.  (AR 32.)  At step five, the ALJ found that there are jobs that exist in

24  significant numbers in the national economy that Claimant can perform, including usher

25  and child care attendant.  (AR 33-34.)

26         Consequently, the ALJ found Claimant not disabled within the meaning of the

27  Social Security Act.  (AR 34.)

28

**DISCUSSION**

The ALJ decision must be reversed.  The ALJ 's light work RFC is supported by substantial evidence for the period prior to April 16, 2010.  The ALJ's RFC, however, is not supported by the medical evidence for the period following a motor vehicle accident on April 16, 2010.  The ALJ's adverse credibility determination is supported by substantial evidence but does not undermine the objective medical evidence supporting a sedentary RFC for the period after April 16, 2010.

The ALJ did not properly consider the vocational evidence.  The ALJ's nondisability determination is not supported by substantial evidence nor free of legal error.

**I.   THE ALJ DID NOT PROPERLY CONSIDER THE MEDICAL EVIDENCE**

Plaintiff contends that the ALJ's light work RFC is contrary to the medical evidence.  The Court disagrees as to the period prior to April 16, 2010 but agrees with the Plaintiff as to the period since that date.

**A.   Relevant Federal Law**

A RFC is not a medical determination but an administrative finding or legal decision reserved to the Commissioner based on consideration of all the relevant evidence, including medical evidence, lay witnesses, and subjective symptoms.  See SSR 96-5p; 20 C.F.R. § 1527(e).  In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain reasonably attributable to the medical condition.  Robbins, 446 F.3d at 883.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians).  See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  In general, an ALJ must accord special weight to a treating

physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632.  Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it.  Id.  However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record.  Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

### B.   Analysis

Plaintiff alleges disabling back pain with an alleged onset date of March 10, 2007. (AR 26.)  Plaintiff also alleges her condition worsened after an April 16, 2010 automobile accident in which her vehicle was rear-ended.  (AR 30, 193.)  The ALJ found that Plaintiff had the medically determinable severe impairment of "disorders of the back" (AR 28) but was capable of light work with limitations.  (AR 29.)  The ALJ's light work RFC is supported by substantial evidence for the period prior to the April 16, 2010 accident but not for the period after that date.

On June 24, 2011, Plaintiff underwent an orthopedic evaluation by Dr. Richard Cestkowski.  (AR 390-395.)  He reviewed Plaintiff's medical records (AR 390), examined Plaintiff and reported his findings and issued a thorough, comprehensive report accompanied by a physical RFC.  (AR 384-395.)  As the ALJ noted, Plaintiff did not wear a brace or use an assist device at the examination and was not taking prescription medication at that time.  (AR 32.)  Dr. Cestkowski diagnosed chronic cervical, trapezius, thoracic and lumbar pain with evidence of degenerative changes but without evidence of upper or lower extremity radiculopathy.  (AR 393.)  He also diagnosed bilateral knee pain with evidence of right and left knee joint crepitation but no evidence of right or left knee meniscal or ligamentous pathology.  (AR 392, 393.)  He opined Plaintiff could lift 20 pounds frequently and 10 pounds continuously, stand and walk one hour in an 8 hour workday and sit six hours in an 8 hour workday.  (AR 32.)  The one hour standing and walking limitations result in a sedentary RFC.  20 C.F.R. § 404.1567; SSR 83-10. Dr. Cestkowski questioned Plaintiff's cooperation who did not appear to put full effort into the examination (AR 391) and assessed symptom magnification.  (AR 393.)  His RFC, however, was "based on objective findings only."  (AR 393.)  In other words, his sedentary RFC with postural limitations was based on the objective medical evidence, not on Plaintiff's exaggerated subjective symptoms.

The ALJ found Dr. Cestkowski's opinion "consistent with the record as a whole, except for his standing and walking limitations, and thus afford it great weight."  (AR

32.)  The ALJ does not discuss his rejection of Dr. Cestkowski's one hour standing and walking limitations other than to say those limitations are not consistent with the record. (AR 32.)  The ALJ's summary of Dr. Cestkowski's evaluation, however, is one sided, citing only negative findings that support the ALJ's RFC and pre-accident evaluations of other physicians.  For example, the ALJ mentions only that there was no evidence of right or left knee ligamentous pathology (AR 32) but ignores altogether Dr. Cestkowski's finding of "bilateral knee pain with right and left knee joint crepitation."  (AR 393.)  The ALJ also fails to discuss the July 18, 2010 MRI that disclosed mild to moderate bilateral stenosis due to disc bulge and advanced, moderately severe facet arthrosis.  (AR 284-285.)  The ALJ's statement (AR 30) that the imaging studies are unremarkable, showing only mild degenerative disc disease, is undermined by the ALJ's curious failure to consider or mention the July 18, 2010 MRI which is the most recent MRI evidence and may be evidence of a worsening of Plaintiff's back condition.  The Commissioner's only response to the ALJ's failure to mention the July 18, 2010 MRI is that the ALJ reasonably balanced Dr. Cestkowski's opinions against the medical record.  The Commissioner's assessment is not correct.

The Commissioner notes that the ALJ considered and discussed the findings of two other examining physicians and a State reviewing physician in rejecting Dr. Cestkowski's standing and walking limitations.  (AR 30-32.)  Dr. Madhavi Gaddam examined Plaintiff on February 17, 2007 and concluded Plaintiff could stand, walk and sit six hours in an 8 hour workday, and could lift or carry 25 pounds frequently and 50 pounds occasionally.  (AR 31, 238.)  Dr. Gaddam noted Plaintiff's efforts during the exam were questionable.  (AR 31, 234.)  In a March 2007 note, State reviewing physician Sharon Eden, M.D., an internist, concurred in Dr. Gaddam's RFC assessment. (AR 32, 239-246.)  The ALJ thought Dr. Gaddam's RFC assessment was a slight overestimate of the Claimant's exertional capacity.  Presumably, the evidentiary basis for the ALJ's finding is the more restrictive exertional limitations assessed by Dr. Cestkowski.  The Commissioner also notes that Plaintiff was examined by internist

Dr. Khossrow Hakimpour on January 21, 2010.  (AR 31, 253-258.)  Dr. Hakimpour opined that Claimant could lift and carry 50 pounds occasionally and 25 pounds frequently, and could stand and walk six hours in an 8 hour workday.  (AR 31.)  Again, the ALJ found that the exertional limitations were an overestimate (AR 31), presumably on the basis of Dr. Cestkowski's more restrictive exertional limitations.

The problem with these evaluations, of course, is that all of them predate Claimant's April 16, 2010 auto accident.  Dr. Cestkowski, in preparing his June 24, 2011 report, had the benefit of all the medical records, and x-ray and MRI evidence both before and after the April 16, 2010 auto accident.  Dr. Cestkowski also was an orthopedist.  Dr. Hakimpour and Dr. Elder are internists who submitted their reports before the April 16, 2010 auto accident and obviously did not see the medical evidence after the accident, in particular the July 18, 2010 MRI, and were not in a position to judge whether the accident caused a worsening of Claimant's position.  Other than acknowledging the April 16, 2010 accident, and crediting for the most part Dr. Cestkowski's evaluation, the ALJ does not discuss whether Plaintiff's condition worsened after the accident and certainly does not explain or discuss why pre-accident evaluations by non-orthopedists should trump the thorough post-accident evaluation of orthopedist Dr. Cestkowski.

Actually, the ALJ appears to have recognized that Plaintiff's condition worsened after her accident.  The ALJ ordered an orthopedic consulting examination after the April 12, 2011 hearing (AR 26), perhaps because of the unmentioned July 18, 2010 MRI.  The ALJ, moreover, accepted Dr. Cestkowski's more restrictive exertional limitations and found that the exertional limitations of Dr. Gaddam, Dr. Eder and Dr. Hakimpour were an overestimate, which apparently is based on Dr. Cestkowski's more restrictive exertional assessment subsequent to the accident.  Yet, inexplicably, the ALJ preferred the pre-accident postural limitations assessed by Dr. Gaddam, Dr. Eder and Dr. Hakimpour without any explanation or discussion, and without acknowledging or discussing the July

18, 2010 MRI or Dr. Cestkowski's finding of bilateral knee pain with right and left knee joint crepitation.

The ALJ properly can rely on the less restrictive postural limitations of Dr. Gaddam, Dr. Eder and Dr. Hakimpoor for any pre-accident RFC.  The ALJ's unexplained reliance on those postural limitations for the period after April 16, 2010, however, does not constitute a specific, legitimate reason for rejecting Dr. Cestkowski's standing and walking limitations.  The ALJ's RFC is not supported by substantial evidence as to the period after April 16, 2010.  The ALJ's statement that "the record did not contain any opinions from treating or examining doctors indicating that the Claimant was disabled or even had limitations greater than those determined in his decision" (AR 30) is plainly inaccurate.  The ALJ's RFC obviously conflicts with Dr. Cestkowski's postural limitations and sedentary RFC.

On remand, Dr. Cestkowski's sedentary RFC for the period after April 16, 2010 should be credited.

**II.    THE ALJ PROPERLY DISCOUNTED PLAINTIFF'S CREDIBILITY BUT PLAINTIFF'S LACK OF CREDIBILITY DOES NOT UNDERMINE THE OBJECTIVE MEDICAL EVIDENCE SUPPORTING A SEDENTARY RFC**

Plaintiff contends that the ALJ's adverse credibility decision is not supported by substantial evidence.  The Court disagrees but the ALJ's adverse credibility determination does not undermine the objective medical evidence supporting a sedentary RFC for the period subsequent to April 16, 2010.

**A.    Relevant Federal Law**

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged.  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen, 80 F.3d at 1281-82 esp. n.2.  The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence.  Reddick, 157 F.3d at 722; Bunnell, 947

1   F.2d at 343, 345.  If the ALJ finds the claimant's pain testimony not credible, the ALJ

2   "must specifically make findings which support this conclusion."  Bunnell, 947 F.2d at

3   345.  The ALJ must set forth "findings sufficiently specific to permit the court to conclude

4   that the ALJ did not arbitrarily discredit claimant's testimony."  Thomas, 278 F.3d at 958;

5   see also Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Bunnell, 947 F.2d at

6   345-46.  Unless there is evidence of malingering, the ALJ can reject the claimant's

7   testimony about the severity of a claimant's symptoms only by offering "specific, clear

8   and convincing reasons for doing so."  Smolen, 80 F.3d at 1283-84; see also Reddick,

9   157 F.3d at 722.  The ALJ must identify what testimony is not credible and what

10  evidence discredits the testimony.  Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

11      **B.    Analysis**

12      In determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically

13  determinable impairments could be expected to cause her alleged symptoms.  (AR 30.)

14  The ALJ, however, found that Plaintiff's statements regarding the intensity, persistence

15  and limiting effects of these symptoms were not credible to the extent inconsistent with

16  her assessed RFC.  (AR 30.)  Because the ALJ did not make an explicit finding of

17  malingering, he was required to provide clear and convincing evidence to discount

18  Plaintiff's credibility.  Smolen, 80 F.3d at 1283-84.  The ALJ did so but the ALJ's adverse

19  credibility determination does not undermine the objective medical evidence supporting

20  a sedentary RFC for the period subsequent to April 16, 2010.

21      The ALJ provides several reasons for discounting Plaintiff's credibility, all of which

22  are legitimate reasons to consider in evaluating credibility and in this case supported by

23  substantial evidence.  Plaintiff, for example, alleged symptoms in excess of both the

24  ALJ's light work RFC and Dr. Cestkowski's sedentary RFC.  An ALJ may consider a lack

25  of medical evidence to corroborate a claimant's alleged pain symptoms so long as the

26  conflict with the medical evidence is not the sole reason for discounting a claimant's

27  credibility.  Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005); Thomas, 278 F.3d

28  at 989.

Additionally, the ALJ found that Plaintiff had received but conservative care such as injections, pain medication and ongoing chiropractic care.  (AR 30.)  Conservative treatment is a valid basis for discounting a claimant's testimony regarding the severity of his or her symptoms.  Parra, 481 F.3d at 750-51.  The ALJ also properly considered Plaintiff's sporadic work history before the alleged onset date, noting her work history raises a question of whether her continuing employment was due to her medical impairments.  (AR 30.)  Thomas, 278 F.3d at 959 (poor work history shows little propensity to work); Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work history may indicate a lack of motivation instead of a lack of ability").

Most importantly, the ALJ found that the medical opinion evidence "strongly suggested that [Plaintiff] was exaggerating her symptoms and limitations."  (AR 30.)  Dr. Gaddam reported Plaintiff's effort during the examination was "questionable."  (AR 234, 235, 236.)  Dr. Cestkowski also observed a lack of effort by Plaintiff during his examination, and assessed Plaintiff with "symptom magnification."  (AR 391, 393.)  Failure to give appropriate effort is a valid basis for discounting credibility.  Thomas, 278 F.3d at 959.

Thus, the ALJ properly discounted Claimant's credibility for clear and convincing reasons supported by substantial evidence for the period before the April 16, 2010 auto accident and after that date to the extent inconsistent with Dr. Cestkowski's sedentary RFC and with the July 18, 2010 MRI.  The ALJ discounted Plaintiff's credibility to the extent inconsistent with his light work RFC (AR 30) but the Court has found the ALJ's RFC unsupported by substantial evidence after April 16, 2010.  Typically, a claimant resorts to subjective pain symptoms as a basis for disability when the objective medical evidence does not support disability.  Reddick, 157 F.3d at 722.  Here, Plaintiff's pain testimony is not inconsistent with the objective medical evidence following the April 16, 2010 accident at least to the extent of Dr. Cestkowski's sedentary RFC and the July 18, 2010 MRI.  Plaintiff's lack of credibility as to limitations in excess of that evidence does not undermine it.  Dr. Cestkowski was quite clear that the limitations he assessed were

1  "based on objective findings only" (AR 393), not Plaintiff's subjective symptom or excess
2  pain testimony.  The ALJ does not suggest that he did.  Thus, Dr. Cestowski's sedentary
3  RFC cannot be rejected because it is based on discredited subjective symptom
4  testimony.  Morgan, 169 F.3d at 602 (a physician's opinion premised to a large extent on
5  claimant's accounts of his or her symptoms may be disregarded when the symptom
6  testimony has been discredited).

7       Accordingly, the ALJ properly discounted Plaintiff's credibility but her lack of
8  credibility does not undermine the objective medical evidence supporting a sedentary
9  RFC for the period following April 16, 2010.

10 **III.   THE ALJ DID NOT PROPERLY CONSIDER THE VOCATIONAL EVIDENCE**

11      Plaintiff contends that the ALJ did not properly consider the vocational evidence.
12 The Court agrees.

13      The ALJ found that Plaintiff could not perform her past relevant work as a packer
14 and produce packer.  (AR 32.)  The ALJ, however, found that Plaintiff could perform
15 other jobs in the national economy such as usher and child care attendant.  (AR 33-34.)
16 The ALJ also made a finding that Claimant "has a marginal education and is able to
17 communicate in English."  (AR 33.)

18      Plaintiff challenges the ALJ's finding that Claimant can communicate in English
19 and with good reason.  The ALJ provides no evidence, reasons or explanation for his
20 finding.  Claimant stated in her disability report that she cannot "speak and understand
21 English."  (AR 173.)  She used an interpreter with Dr. Gaddam (AR 232) and
22 Dr. Hakimpour (AR 253), and at the hearing.  Dr. Cestowski observed Claimant used an
23 interpreter because "the patient does not speak English."  (AR 393.)  As a result, Plaintiff
24 contends that she cannot perform the jobs of usher and child care attendant, both of
25 which would require her to recognize the meaning of 2500 words, read at a rate of 95-
26 120 words per minute, and print and speak simple sentences.  See Dictionary of
27 Occupational Titles ("DOT") 344.677-014 (usher) and 349.677-018 (child care
28 attendant).

The basis for the ALJ's finding that Plaintiff is able to communicate in English is unknown, and there is no discussion of the communication requirements in DOT 344.677-014 and 349.677-018.  The Commissioner tries to salvage the ALJ's finding by noting that Plaintiff stated in a disability report that she both read and understood English.  (AR 173.)  The Commissioner, however, omits what preceded this statement in the disability report.  Plaintiff stated she could not "speak and understand English."  (AR 173.)  (Emphasis added.)  This would indicate Plaintiff cannot speak or understand spoken English but she can read and understand written English to some extent.  (Emphasis added.)  The usher and child care attendant jobs involve significant serving of people and presumably require some ability to speak and understand spoken English.  The ALJ's finding that Plaintiff is able to communicate in English is overbroad and ambiguous because she may be able to read but not speak English.

Plaintiff's language ability was not discussed at the hearing and the vocational expert offered no elaboration of the DOT communication requirements for the two jobs.  The Commissioner also does not address the DOT communication requirements.  The ALJ plainly failed to develop the record properly.  In Social Security cases, the ALJ has a special, independent duty to develop the record fully and fairly and to assure that the claimant's interests are considered.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Smolen, 80 F.3d 1273, 1288 (9th Cir. 1996); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).  The ALJ has a basic duty to inform himself about facts relevant to his decision.  Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, Jr., concurring).  The ALJ's duty to develop the record fully exists even when the claimant is represented by counsel and is "heightened" when the claimant may be mentally ill and unable to protect his or her interests.  Tonapetyan, 242 F.3d at 1150.  Ambiguous evidence or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence triggers the ALJ's duty to "conduct an appropriate inquiry."  Id.  Here, the ALJ failed to do so.

The Commissioner also notes that Plaintiff lived in the United States for 26 years, was a naturalized citizen and had previously worked a number of jobs in the United States.  The jobs, however, were unskilled packer jobs that would not seem to require communication skills.  Her ability to read but not speak English is not necessarily inconsistent with her naturalized citizenship status or her time in this country.

Fundamentally, however, the issue of communication skills was for the ALJ to address which he failed to do.  The Commissioner cannot supply arguments not contained in the ALJ decision.  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts").  Again, the ALJ failed to develop the record properly on the communication requirements for the usher and child care attendant jobs and Plaintiff's ability to meet those requirements.

The ALJ's finding that Plaintiff is able to communicate in English is not supported by substantial evidence as to her ability to speak English and to perform the jobs of usher and child care attendant.

* * *

On remand, the parties will have to sort out the effect of the Court's ruling that the ALJ's light work RFC is supported by substantial evidence through April 16, 2010, which poses a problem for Plaintiff's application for disability benefits in that her date last insured is September 30, 2008.  (AR 28.)  In any event, even if Plaintiff is not eligible for Social Security disability benefits, Plaintiff contends that, based on her age, education, unskilled work history and Dr. Cestkowski's sedentary RFC, she would be entitled to Supplemental Security Income benefits as of April 20, 2010.  The parties will have to address that issue on remand as well.

/ / /

/ / /

/ / /

/ / /

/ / /

**ORDER**

    IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding for further proceedings in accordance with this Memorandum Opinion and Order and with law.


DATED: <u>November 21, 2013</u>                    <u>         /s/ John E. McDermott         </u>
                                                     JOHN E. MCDERMOTT
                                                     UNITED STATES MAGISTRATE JUDGE